## JORDAN PETTY v. THE STATE.

CRIMINAL LAW. *Murder in second degree.* *What is not.* Defendant was employed by deceased, and while on one occasion he was engaged in a quarrel with a fellow servant, deceased rode up on horse-back and ordered him to go to the house, at the same time charging him with stealing a pair of boots, whereupon defendant called the deceased a d—n lie. Deceased dismounted by the side of defendant and struck at him with a stick. Defendant fell back. Deceased then struck at him with a fence rail. Defendant still fell back, and when deceased threw a rock at him defendant threw one at deceased, which caused his death: *Held,* the evidence fails to show that the killing was done with malice aforethought, which is essential to sustain a verdict of murder in the second degree. There had been no previous misunderstanding between the parties.

### FROM GILES.

Appeal from the Criminal Court.

ATTORNEY-GENERAL HEISKELL for the State.

No counsel marked for plaintiff in error.

DEADERICK, J., delivered the opinion of the court.

At September Term, 1872, the plaintiff in error was convicted of murder in the second degree in the Criminal Court of Giles county. Motions for new trial and in arrest of judgment were entered and were overruled, and judgment of the court pronounced in conformity to the verdict of the jury, which fixed the term of imprisonment in the penitentiary at fourteen

years. From this judgment the defendant appealed in error to this court.

Although sound legal propositions have been discussed by the counsel for plaintiff in error, they rely mainly for a reversal of the judgment upon the insufficiency of the evidence to support the verdict.

There are no material discrepancies in the testimony of the two witnesses examined, who were present at the homicide.

The substance of the testimony of Eliza Wilkerson, a colored woman, is that on the 1st day of May, 1870, the defendant in error, a colored man, was in the service of deceased, Zachery T. Wilkerson, as a laborer upon the farm, and that he had been directed by Luther Wilkerson, the brother of the deceased, to turn the horses into a lot to be fed; that Petty, the plaintiff in error, and one Stephenson, another colored man employed on the farm, got into a dispute about putting up the bars of the lot, and that Petty had walked off from the bars and picked up a stone, as he said, for Stephenson, and sat down upon the wood pile. While Petty and Stephenson were quarreling, deceased, who had been away from home, rode up, and asked "what all this fuss was about. I heard it before I came around the house." Petty replied, "he was not going to stand Stephenson's running over him." Deceased, who was still on his horse, told Petty to "go on home if you are done feeding," and said further, "there are a pair of boots gone from the bridge, and you got them." Petty replied, "whoever says that tells a d——d lie." Deceased made no

reply, but immediately got down off his horse right by the side of Petty, and struck at him with a small walking cane; that Petty fell back, and deceased then struck at him with the half of an ash fence rail; that Petty fell back, and deceased threw a stone at him and had another in his hand, or was stooping to get another, when Petty threw a stone at deceased, which struck him in the temple. Deceased fell as soon as he was struck, and that Petty then walked off, fast, towards his home, half a mile off. Witness did not see the stone with which deceased was struck, nor did she know whether deceased had struck Petty. There were a great many rocks on the ground at the place where the difficulty occurred. That she does not know of any previous difficulty. She was milking near the wood pile when the difficulty occurred, and was near the parties. Witness states that Petty fell back all the time, until he threw the stone, and that it all took place as quickly as it could be, and in as little time as it takes to tell it; that Stephenson was larger and older than Petty; that deceased was a grown man as large as Petty.

Luther Wilkerson, the brother of the deceased, testified that deceased was struck on 1st May, 1870, in Giles county, and died next morning; that in the evening of the 1st of May Petty came to him while he was at supper to get the crib key to feed the horses, and that he told him to turn them into the lot and he, witness, would feed them; that witness passed the wood pile in going to feed the horses, and saw Petty sitting on it    that deceased had not then

returned; that after walking off twenty-five or thirty yards he heard loud talking, and saw two persons running off, the one after the other; then heard a lick, and saw deceased fall. It was then dusk; that deceased and Petty were five to ten feet apart when deceased fell; that he did not see the stone with which the lick was struck, and Petty, as soon as the lick was struck, ran off; that he knew of no threats against deceased, or previous unfriendly feelings between the parties.

The physician who visited deceased before his death, and other witnesses as to the flight and arrest of Petty, and as to some declarations made by him, were examined, but it is not material, in one view of the case, to discuss their testimony, as the conviction must stand or fall upon the testimony of the two witnesses who were present at the killing.

These witnesses showed that no ill-will had existed between the parties; that Petty, when assaulted, had retreated, and did not attempt to repel the assault of the deceased until he had been successively assaulted with a walking stick, the half of an ash fence rail, which is described as being about as long as deceased was tall, and after the throwing of a stone, and when deceased was from five to ten feet of him, with another stone in his hand, or stooping down to get one. It is shown that Petty had a stone in his hand when deceased rode up, which he had picked up during his quarrel with Stephenson. Whether he had this same stone during his retreat from deceased, or picked up another, does not appear from the testimony.

Without discussing the numerous authorities cited from our reports, we are of opinion that the evidence presented in this record does not show that the killing was done with malice aforethought, which is essential to sustain a verdict of murder in the second degree.

The judgment of the Criminal Court will be reversed, and the cause remanded for a new trial.